

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00278-CV

**IN THE INTEREST OF I.R.M.**, A.M.M., V.M., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA01259
Honorable Susan D. Reed, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:          Luz Elena D. Chapa, Justice
                  Beth Watkins, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: December 22, 2021

AFFIRMED AS MODIFIED

Appellant M.M. appeals the trial court's order terminating his parental rights to his children

I.R.M. (born 2005), A.M.M. (born 2006), and V.M. (born 2008).[1] M.M. argues the evidence is

legally and factually insufficient to support the trial court's findings under Texas Family Code

section 161.001(b)(1)(D) and its finding that termination is in the best interest of the children. We

modify the trial court's order to delete the subsection (D) finding and affirm the order as modified.

### BACKGROUND

On March 31, 2020, the Texas Department of Family and Protective Services received

reports that the children's mother, L.M.S., had been using drugs, "had not been seen for several

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

weeks," and "would disappear for periods of time." The reports indicated L.M.S. had left the children in the care of their maternal grandparents, but the grandparents were "mean to the children, hitting the children, locking them out of the house and not feeding them. The children were basically just roaming the streets." The Department "was getting reports from people that the children were moving house to house within the neighborhood."

After searching "[f]or months," the Department located the children and took them into custody "for lack of care." At the time of trial, I.R.M. was in a juvenile detention facility, A.M.M. was "placed with CPS," and V.M. was placed with her maternal grandparents. M.M., who is the children's father, was incarcerated during the Department's investigation and at the time of the children's removal.

On June 19, 2020, the Department filed a petition to terminate L.M.S.'s and M.M.'s parental rights, and it obtained temporary managing conservatorship over the children. On June 18, 2021, the trial court held a one-day bench trial at which M.M. appeared. The trial court heard testimony from four witnesses: (1) the Department's investigator, Karen LeGrange; (2) the Department's caseworker, Ammie Martinez; (3) M.M.; and (4) M.M.'s wife, S.M. At the conclusion of trial, the court signed an order terminating M.M.'s parental rights pursuant to section 161.001(b)(1)(D), (N), (O), and (Q) and finding that termination of M.M.'s parental rights was in the best interest of the children. M.M. appealed.[2]

## ANALYSIS

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and

---

[2] The trial court also terminated L.M.S.'s parental rights. That portion of the order is not at issue in this appeal.

powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate M.M.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "'at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d at 266). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

### *Statutory Termination Grounds*

*Applicable Law*

In his first issue, M.M. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under subsection 161.001(b)(1)(D). He does not raise a similar challenge under subsections (N), (O), or (Q).

In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at \*1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant does not challenge all the grounds that may support an order of termination, we typically do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts must address a parent's challenge to a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Therefore, we will consider M.M.'s sufficiency argument as to subsection (D) even though he does not challenge termination under subsections (N), (O), and (Q). *See In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at \*2 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.).

Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to

remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id.*

*Application*

In his challenge to the trial court's findings under subsection (D), M.M. argues the Department did not present any evidence showing "harm to the children from [M.M.]" or that M.M. knew or should have known L.M.S. was exposing the children to harm.

The trial court heard evidence that M.M. had previously been accused of family violence against L.M.S, but M.M. testified those charges were later dropped. The trial court also heard testimony that M.M. and his current wife, S.M., have been involved in "fights" with L.M.S. Furthermore, M.M. testified that prior to his current incarceration, he had been convicted of DWI, possession of a controlled substance, and burglary of a building. He testified that his current incarceration resulted from convictions for evading arrest in a vehicle and possession of a controlled substance with intent to distribute.

Nevertheless, "Section 161.001(b)(1)(D) requires the endangerment to the children to be the direct result of the children's environment." *In re R.A.*, No. 10-21-00022-CV, 2021 WL 2252193, at *2 (Tex. App.—Waco May 27, 2021, pet. denied) (mem. op.). Here, although the Department presented evidence that it had previously investigated the family in 2009, it did not

present evidence of when any of the conduct described above occurred. This omission is significant because M.M. has been incarcerated since 2018, approximately two years before the Department removed the children. The Department did not present any evidence that the environment that led to the children's removal in 2020 directly resulted from conduct that occurred, at the latest, in 2018. To the contrary, the evidence shows the Department investigated the home and ultimately removed the children because of L.M.S.'s contemporaneous conduct, not M.M.'s past conduct. *See Walker v. Dep't of Family & Protective Servs.*, 251 S.W.3d 563, 565 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (reversing (D) finding against father because he "was in jail at the time CPS investigated and removed the children from [mother's] house").

Moreover, the Department presented no evidence that M.M. knew or should have known that L.M.S. was exposing the children to harm at the time of their removal. Nor did it present any evidence that M.M. could have taken action to protect the children during that time but failed to do so. *See id.* at 565–66. Additionally, while the trial court heard evidence that S.M. allowed the children to engage in unsafe behavior during M.M.'s incarceration, there is no evidence that M.M. was aware of his wife's actions.

We conclude that the Department's evidence, even when viewed in the light most favorable to the judgment, would not allow a reasonable factfinder to form a firm belief or conviction that M.M. knowingly placed or knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(D); *Walker*, 251 S.W.3d at 566. Accordingly, the evidence is legally insufficient to support a finding under subsection (D). *See Walker*, 251 S.W.3d at 566. We therefore sustain M.M.'s first issue and modify the trial court's order of termination to delete the subsection (D) finding. However, because M.M. did not challenge the trial court's findings under subsections (N), (O), or (Q), we must accept the validity

of those findings and affirm them. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

### Best Interest

#### Applicable Law

In his second issue, M.M. challenges the legal and factual sufficiency of the trial court's order that termination of his parental rights was in the children's best interest. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

*Application*

The Department's caseworker testified that during this case, M.M. was denied parole, and his anticipated release date falls after I.R.M.'s and A.M.M.'s eighteenth birthdays. *See* TEX. FAM. CODE § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. At trial, M.M.'s attorney conceded "the [subsection (Q)] grounds apply, clearly, given his sentence." *See In re C.H.*, 89 S.W.3d at 28. The evidence shows M.M. has an extensive criminal history, has been convicted of drug-related crimes, and is currently unable to provide for the children. *See Holley*, 544 S.W.2d at 371–72; *see also* TEX. FAM. CODE § 263.307(b)(2), (7), (8), (11), (12). The Department's caseworker testified that while she believes the children love M.M., they reported to her that they have only spoken to him "once or twice" during the year this case was pending. She also stated that the children do not write letters to M.M., even though she has given them envelopes and stamps.

M.M. argues, however, that the children love him, are bonded to him, and want S.M. to be considered as a potential placement. He testified that he speaks to the children on their cell phones

frequently, "[o]nce a week, I guess." He argues the Department's plan for the children "is totally uncertain," noting the children are currently separated from each other and that the Department's caseworker admitted it will be difficult to find adoptive homes for them. He contends that in contrast to the Department's "uncertain" plans for the children, he presented evidence showing S.M. "is ready to care for the children."

The Department's caseworker confirmed that A.M.M. and V.M. began asking to see S.M. approximately two months before trial. She also testified, however, that the children previously told her they "hated" S.M. "and did not want to speak to her." The caseworker further testified that the children report S.M. allows them to use drugs and "go wherever they want[] to go" and that she had seen a photo of A.M.M. "smoking with [S.M.] standing right next to her." While S.M. denied that she allows the children to use drugs or smoke, she also testified they have smoked a "puff bar"[5] in her presence. She testified she is "not okay" with allowing the children to smoke the puff bar. But when asked why she did not stop them from doing so, S.M. testified, "They're not going to listen to me." *See* TEX. FAM. CODE § 263.307(b)(12). S.M. also testified that she previously had custody of I.R.M. but "[t]here was an incident that happened" that resulted in S.M. removing I.R.M. from the home and taking her to a children's shelter. She testified, "[I.R.M.] did something really bad. . . . [I.R.M.] said she wanted to run away and she did run away. And I told [I.R.M.] I couldn't do this no more." Finally, the Department's caseworker testified that S.M. told her the Department "would have to give [S.M.] housing" for S.M. to take the children. Based on this evidence, the trial court could have reasonably determined that M.M.'s plan for S.M. to care

---

[5] Although the record does not define the term "puff bar," we take judicial notice that PuffBar is a brand of "disposable vape devices" that "contain nicotine . . . and are intended to be used only by adults at least 21 years of age[.]" *See* PuffBar Official Website, www.puffbar.com; *see also* TEX. R. EVID. 201.

for the children in his absence supported a finding that termination was in the children's best interest. *See Holley*, 544 S.W.2d at 372 (trial court may consider parent's plan for the children).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of M.M.'s parental rights was in the children's best interest. *In re J.F.C.*, 96 S.W.3d at 266. While M.M. presented evidence contrary to this finding, that evidence is not so significant that a reasonable factfinder could not have formed a firm belief or conviction that termination was in the children's best interest. *See id.* We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule M.M.'s arguments to the contrary.

## CONCLUSION

We modify the trial court's order of termination to delete the subsection (D) finding and affirm the order as modified.

Beth Watkins, Justice